HENRY M. DAY, Appellant, *v.* BENJAMIN HACKNEY *et al.,* Appellees.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

For any misfeasance of a sheriff other than a failure to return an execution or to pay over money collected on an execution, or for any other misconduct than is mentioned in the statute, the party must resort to his action; summary proceedings against a sheriff will be limited to such derelictions as the statute provides for.

THIS was a summary proceeding by motion by appellees against appellant.

The bill of exceptions shows that, at the hearing of the motion, July 10, 1856, appellees read in evidence an execution, under seal of said court, dated March 14, 1855, in favor of appellees, and against Alford & Chapman, for $593.09, directed to sheriff of Kendall county, with said sheriff's return and indorsements thereon, on which was a receipt signed by J. J. Cole. The indorsements were as follows:

Rec. this writ, March 15, 1855, at one P. M., from J. J. Cole, agent for plaintiff. H. M. DAY, *Sheriff of Kendall County.*

March 15th, 1855.—By virtue of the within execution, levied on the following real estate, (here follows description of divers tracts of land); also the following personal property, (here follows list of horses, etc.)
H. M. DAY, *Sheriff of Kendall County.*

The above real estate was by me advertised, etc., before the 25th of June, 1855, at one o'clock P. M., when the said real estate was by me sold, and the same was struck off to Jeremiah J. Cole, agent for plaintiffs, for $619.09, he, the said Cole, being the highest bidder, but *no money was paid to me,* the land being bid off as aforesaid by said Cole, and this execution is returned in this manner by his direction. HENRY M. DAY, *Sheriff Kendall County.*

Rec'd of H. M. Day, Shf. of Kendall Co the amt of debt and costs on the within Ex for Hackney Jenks & Co JEREMIAH J. COLE

Appellees then read in evidence the affidavit of Barr, of 7th July, 1856, that on 14th March, 1855, appellees recovered judgment in said Common Pleas Court against Alford & Chapman, for $593.09 and costs, that execution was issued, directed to sheriff of Kendall.

That on 15th March, 1855, execution and fee bill was *by him forwarded* to Kendall county, *to be* delivered to sheriff.

That on 16th March, 1855, Barr saw sheriff Day, who said he had received the execution and had levied on Alford's real estate.

That Barr consulted and directed in regard to same.

That on 25th June, 1855, Barr went to Oswego to attend the sale of said lands by sheriff.

That he then *learned* that said sheriff had two other executions levied upon the same property, and that if the same was sold it would be sold upon all the executions, (one of which affiant believes was in favor of Jeremiah J. Cole.)

That he *understood* that Cole, perhaps with others, was trying to buy the lands of Alford, and negotiations were pending when this affiant *had to leave*.

That Cole informed Barr, that if lands were sold upon the executions, he intended *to bid off the same* for *enough* to *cover all of said judgment*.

That with *that understanding* Barr left before the sale was made.

That said sheriff knew at that time that Barr was at Oswego *attending to the same* as attorney of the plaintiff.

That Barr afterwards *learned* that said premises were sold and bid off by said Cole, and went to Oswego to get the money thereon.

That Cole being inquired of for the sheriff, said to Barr that the sheriff was out of town, but that *he* could pay a part of the money going to the plaintiffs, and Barr received of Cole $400 to apply on the same.

That Barr *understood* " that the sheriff kept his official papers at Oswego, in the office of Cole, and that when property was bid off or redeemed by Cole, the money was not paid over at the time, but credit given on the deal between the parties, as a deposit or otherwise."

That from Barr's recollection of the *contents* of the *record* of the certificate of sale, as recorded in the recording office of Kendall county, the premises were sold upon all of said executions together, and but one certificate of sale, and that to said J. J. Cole.

That Barr afterwards *saw* said execution, with a return thereon, (which he *believes* was in handwriting of said sheriff,) in substance as follows:

" I return this execution satisfied — money paid to plaintiffs."

That this was on said execution the 13th of June, 1856, and before, but is now erased.

That the return now on the execution was *not* then on the same.

That said return does not state to whom the certificate of sale was made.

That Barr has twice made demand upon said sheriff, (H. M.

Day,) in writing, to pay over the balance due to plaintiffs upon said writs to plaintiffs, or their attorney, and also to return said writs.

That the sheriff has neglected to pay.

That the present returns on said execution have been made since such demand.

That Barr was attorney of plaintiffs.

That he believes he was the only attorney.

That on 13th of June, a written notice, attached to the affidavit, was served on Day.

The written notice referred to, notifies Day that $243.33, or thereabouts, issue to the plaintiffs, on an execution in your hands, wherein Benjamin Hackney, and Levi Jenks, and Albert Jenks, were plaintiffs, and John W. Chapman and Clark B. Alford were defendants; and also on a fee bill in the same case, which execution and fee bill issued, etc.

And demand is hereby made upon you for the money due thereon, (said fee bill and execution,) and you are notified, that unless you return said execution and fee bill, and pay over said money to said plaintiffs, or their attorney, within ten days from date hereof, that at next term of said court, etc., plaintiffs will apply to said court for a judgment against you for the amount due them, with twenty per cent. damages, according to statute.

That after the sale, Cole called on affiant and said he was to pay plaintiffs' demand.

That affiant believes he was the only one of the firm that ever had any correspondence with said Cole about said matter in any way.

This was all of plaintiffs' evidence.

Defendant then read in evidence an extract from a letter dated March 9, 1855, and written by appellees to said Cole, as follows:

"Can that demand against Alford & Chapman be collected, if sent to you?"

Also, another letter from plaintiffs to Cole, as follows:

"Can you get at that old matter of John Chapman & Alford, but due Hackney, Jenks & Co., and send it to me on receipt of this? If not, can you give us a statement of the balance due, and how we must proceed to get it?"

This was all the evidence.

The court, reciting on the record that the sheriff had returned the execution, and "it appearing from his return thereon indorsed, he sold the property of said defendant on said execution, on the 25th day of June, 1855; and that the same was struck off to Cole (who is stated in the return to have been agent of plaintiffs) for $619.09;"

And it further appearing to the court that Cole was not the agent of plaintiffs;

And that said sheriff *collected* on said execution the money due thereon, June 25, 1855;

And that plaintiffs have received thereon $400;

That the amount due thereon now from said sheriff is $219.09, besides the penalty imposed by statute;

Ordered, that Day pay over to plaintiffs the $219.09, with twenty per cent. thereon from 25th June, 1855, till paid; and further, that he pay the cost of this proceeding.

To this decision defendant excepted; then moved for new trial, which was overruled, and he excepted.

T. LYLE DICKEY, for Appellant.

GRANT GOODRICH, for Appellees.

CATON, C. J. This was a summary proceeding by motion under the 44th section of the practice act, against the sheriff of Kendall county, for failing to pay over money by him collected on an execution. The proof and even the complaint which is the foundation of the proceeding, fails to show that any money ever actually came to the hands of the sheriff upon the execution. We think the proof satisfactorily establishes that the execution was sent to Cole by the attorney of the plaintiff, and was by Cole handed to the sheriff, who levied upon certain lands, which were bid off by Cole in his own name, and probably assigned by him for his own benefit, but that he never paid to the sheriff any money upon that bid, designing and intending to pay the money directly to the plaintiff or his attorney, and that he did actually pay to the plaintiff's attorney the greater part of the money called for by the execution. In the view we take of the statute under which this proceeding was instituted, it is unnecessary to inquire whether the sheriff supposed that Cole was the authorized agent or attorney of the plaintiff or not, or whether he was in fact such agent or attorney. Admitting that he knew otherwise and improperly gave Cole a credit upon his bid, and trusted him to pay the amount of the bid to the plaintiff in the execution, still he is not liable for such official misconduct under the statute, but a remedy must be sought upon his official bond or by an action on the case against him. This proceeding against a sheriff is only authorized for failing to return an execution, or failing to pay over money collected upon an execution, and cannot be maintained for failing to collect money upon an execution or for any other official misconduct than that mentioned in the law. The

statute is penal in its character, punishing the sheriff with a penalty of twenty per cent. upon the amount of money collected and not paid over, and must be strictly construed. We cannot extend it by construction so as to make it embrace cases not within the expressions of the enactment. As the proof fails to show that the sheriff ever did receive any money on this execution which he failed to pay over, the judgment against him must be reversed.

*Judgment reversed.*